FILED

2026 Apr-27  PM 03:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

**ANTHONY LAMON FRAZIER,**
     Petitioner,

**v.**

**UNITED STATES OF AMERICA,**
     Respondent.

**Case No. 1:23-cv-8010-CLM**
**(1:20-cr-300-CLM-GMB)**

## MEMORANDUM OPINION AND ORDER

Petitioner Anthony Lamon Frazier moves to vacate, set aside, or otherwise correct his sentence under 28 U.S.C. § 2255. (Docs. 1, 8). Frazier's original pro se § 2255 motion raises three claims: (1) the search of Frazier's work truck in 2020 was improper; (2) counsel was ineffective for failing to acquire Frazier's work attendance records, not authenticating a voice recording the Government submitted into evidence, and refusing to allow two character witnesses to testify on Frazier's behalf; and (3) counsel's closing argument was deficient and failed to explain that Frazier had served in the Army Reserve or set up the businesses FF Auto and Head of Game Management. (Doc. 1, pp. 18–20). Through counsel, Frazier has filed an amended § 2255 motion (doc. 8) that expands on these claims and adds that: (1) counsel was ineffective for failing to obtain Frazier's cell phone records; (2) Frazier's Sixth Amendment right to testify was violated; and (3) the jury should have heard about the nature of the charges and potential sentence the confidential informant who testified against Frazier was facing.

For the reasons stated within, the court **DISMISSES WITH PREJUDICE** Frazier's claims related to (1) the search of his work truck, (2) the failure to conduct a voice analysis, (3) the failure to call character witnesses, (4) counsel's closing argument, and (5) the lack of evidence on the confidential informant's pending charges. The court **SETS** an evidentiary hearing on all other claims for **July 2, 2026, at 9:00am** in the United States Courthouse, Anniston, AL 36201 (1100 Gurnee Ave.).

## BACKGROUND

1. *Conviction*: On September 8, 2020, Frazier was indicted on one count of possession with the intent to distribute 50 grams or more of methamphetamine. (Doc. 8 in Case No. 1:20-cr-300-CLM-GMB). According to the Government, Frazier possessed the methamphetamine during a controlled drug buy in October 2019. (*See id.*). Frazier pleaded not guilty, and his case went to trial on November 30, 2020. On the first morning of trial, the court held a motion hearing on Frazier's motion to exclude under Federal Rule of Evidence 404(b) videos of two positive drug-dog inspections of Frazier's county work truck in August 2020. (*See* Doc. 66 in Case No. 1:20-cr-300-CLM-GMB). The court denied Frazier's motion, finding that the videos were relevant to the issues of identity and modus operandi. (*Id.*, pp. 5–6).

At trial, the Government called five witnesses: a confidential informant, ATF Special Agent Carrie Lane, Talladega County Drug Task Force Officer Blake McGhee, Drug Enforcement Administration Chemist Tyrone Shire, and Talladega County Drug Task Force K-9 handler Chris Rogers. Rogers was the last Government witness. (*See* Doc. 68, pp. 51–71 in Case No. 1:20-cr-300-CLM-GMB). So before Rogers testified, the court told Frazier's attorney, Emory Anthony, that he needed to begin to think about what defense to put on, if any. (*Id.*, p. 49). Anthony responded that he needed "to talk to [his] client and his family." (*Id.*). The court then cleared the courtroom of anyone other than Frazier, Anthony, and Frazier's family. (*Id.*, pp. 49–50). When everyone returned to the courtroom, Rogers gave his testimony, and the Government rested its case. (*Id.*, pp. 51–71). Anthony moved for a judgment of acquittal, which the court denied. (*Id.*, pp. 71–72). The court then asked Anthony if Frazier would like to put on any witnesses, and Anthony responded, "Judge, we are going to rest." (*Id.*, pp. 72–73).

After a lunch recess, the court gave the jury its final jury instructions, and the parties presented their closing arguments. (*Id.*, pp. 82–124). Anthony's closing argument focused on discrediting the confidential informant's testimony. (*Id.*, pp. 98–105). Anthony pointed out that the confidential informant "had an interest in the outcome of the case" and that the jury needed to consider "whether or not he was promised any type of favor, favorable treatment from the government." (*Id.*, pp. 99, 104).

Anthony also said that Agent Lane's testimony about Frazier's use of a work truck was contradictory and suggested that she was trying to match her testimony with what the confidential informant said even though their recollections differed. (*Id.*, pp 100–01). But Anthony made it clear that he wasn't attacking Agent Lane's credibility. (*Id.*, p. 100). Toward the end of his closing argument, Anthony began to discuss Frazier's work for the county, other business ventures, and desire to become a sports agent. (*Id.*, pp. 105–06). He then said that the Government hadn't shown the jury "one thing . . . that attacks [Frazier's] character by anybody." (*Id.*, p. 106). The Government objected, and the court held a sidebar. (*Id.*, pp. 106–09). During the sidebar, the Government explained that it believed that this argument was improper because Anthony knew that the Government was conducting "a bigger investigation" of Frazier and that the Government had refrained from presenting evidence of this investigation to the jury. (*See id.*). The court agreed and told Anthony to "stick to the facts that we have discussed in this trial." (*Id.*, p. 109). Anthony then ended his closing by telling the jury to ask themselves whether "this CI is a person I can believe in?" (*Id.*, p. 110).

After the Government presented its rebuttal closing argument, the jury began deliberations. The next day, the jury returned its verdict, finding Frazier guilty of possessing with intent to distribute methamphetamine weighing 50 grams or more. (Doc. 169, p. 10 in Case No. 1:20-cr-300-CLM-GMB). In post-trial motions, Frazier renewed his motion for judgment of acquittal and asked for a new trial. (Docs. 43, 45, 47 in Case No. 1:20-cr-300-CLM-GMB). The court denied Frazier's motions. (Doc. 52 in Case No. 1:20-cr-300-CLM-GMB).

2. *Sentence + Direct appeal*: The court sentenced Frazier to a term of 120 months' imprisonment. (Doc. 59 in Case No. 1:20-cr-300-CLM-GMB). Frazier timely filed a direct appeal, challenging the court's decision to admit evidence of the drug dog alerting to the presence of narcotics in his work truck. The circuit court affirmed, finding that the drug-dog videos were relevant to proving Frazier's identity and that the probative value of the drug-dog inspection evidence was not substantially outweighed by unfair prejudice. (*See* Doc. 77-1 in Case No. 1:20-cr-300-CLM-GMB).

3. *Section 2255 motions*: A year later, Frazier filed his initial pro se § 2255 motion. (Doc. 1). In his motion, Frazier asserted that he was entitled to § 2255 relief because (1) the search of Frazier's work truck in 2020 was improper; (2) counsel was ineffective for failing to acquire Frazier's work attendance records, not authenticating a voice recording the Government submitted into evidence, and refusing to allow two character witnesses to testify on Frazier's behalf; and (3) counsel's closing argument was deficient and failed to explain that Frazier had served in the Army Reserve or set up the businesses FF Auto and Head of Game Management. (Doc. 1, pp. 18–20). The court then granted Attorney John Robbins' request that he be given time to file an amended § 2255 motion on Frazier's behalf. (Docs. 4, 7). Frazier's amended motion added that (1) counsel was ineffective for failing to obtain Frazier's cell phone records; (2) Frazier's Sixth Amendment right to testify was violated; and (3) the jury should have heard about the nature of the charges and potential sentence the confidential informant who testified against Frazier was facing. (Doc. 8). Frazier also asked the court to (a) allow him to conduct discovery, (b) not rule on his § 2255 motions until after his trial in Case No. 1:21-cr-371-CLM-JHE, (c) conduct an evidentiary hearing, and (d) grant Frazier § 2255 relief by setting aside his conviction and ordering a new trial. (*Id.*, pp. 4–5).

The Government responded to Frazier's motions with an affidavit from Anthony that disputes Frazier's claims of deficient performance. (Doc. 11-1). According to Anthony, Frazier never asked him to obtain his work or cell phone records. (*Id.*, ¶¶ 2, 4). But Anthony says that he and Frazier did discuss whether to request a voice analysis of the voice recording that the Government said recorded Frazier discussing the drug buy with the confidential informant. (*Id.*, ¶ 3). According to Anthony, he and Frazier ultimately decided to use Frazier's girlfriend and brother to verify that the call was not his voice. (*Id.*). But after the Government rested, Anthony and Frazier decided not to present any evidence. (*Id.*). Anthony also says that (a) the other witnesses he contacted about testifying on Frazier's behalf refused to testify, and (b) while he explained to Frazier that he had a right to testify, Frazier decided that he did not wish to testify. (*Id.*, ¶¶ 5–6).

4. *Frazier II*: After Frazier's § 2255 motion was fully briefed, he went to trial in Case No. 1:21-cr-371-CLM-JHE, which stemmed from the investigation that the Government alluded to during the closing argument sidebar. The jury found Frazier guilty of 23 counts of money laundering the proceeds of drug distribution, four counts of structuring transactions to avoid reporting requirements, one count of conspiracy to commit wire fraud, one count of money laundering the proceeds of wire fraud, and three counts of filing a false tax return. (Doc. 208, p. 1 in Case No. 1:21-cr-371-CLM-JHE). The court sentenced Frazier to a concurrent sentence of 120 months' imprisonment on the money laundering counts, 60 months' imprisonment on the structuring and conspiracy to commit wire fraud counts, and 36 months' imprisonment on the false tax return counts. (*Id.*, p. 2). The court also ordered that Frazier's sentence run partially concurrent with the 120-month sentence for his methamphetamine possession conviction. (*Id.*). Frazier filed a direct appeal, and the circuit court affirmed his conviction and sentence. (*See* Doc. 266-1 in Case No. 1:21-cr-371-CLM-JHE).

## DISCUSSION

The court will address in turn each claim that Frazier raised in his original (doc. 1) and amended (doc. 8) § 2255 motions.

### A.   Dog Sniffs of Frazier's Work Truck + Arrest

Frazier first claims that the drug-dog inspection evidence was improper because only sealed bottles of alcoholic beverages, which tested negative for narcotics, were found in his vehicle. He also says that no grounds for a search were established and notes that he wasn't arrested for the possession of methamphetamine in October 2019 until September 2020. Finally, Frazier says "Mr. Anthony failed to present this fact at my trial." (Doc. 1, p. 18).

Frazier's arguments related to his work truck and arrest are conclusory and fail to cite the constitutional provisions or statutes that Frazier contends were violated. So the court finds that Frazier has forfeited this claim by failing to adequately brief it. *See King v. Warden, Ga. Diagnostic Prison*, 69 F.4th 856, 877 (11th Cir. 2023) ("[O]rdinary forfeiture rules, under which a party forfeits an argument by failing to adequately brief it, apply to habeas proceedings in

the district court. So [Frazier] had to make more than the skeletal argument in his petition to preserve these issues." (citations omitted)).

This claim also fails on the merits. As the Eleventh Circuit explained in its ruling on Frazier's direct appeal, the Government presented enough evidence for the jury to "find that Frazier possessed narcotics in his truck on two occasions in August 2020." (Doc. 77-1, p. 23 in Case No. 1:20-cr-300-CLM-GMB). And this court has already rejected Frazier's argument that "bottles seized from his truck test[ing] negative for narcotics" undermined the Government's evidence related to the drug-dog videos. (Doc. 52, p. 8 in Case No. 1:20-cr-300-CLM-GMB). As the court explained, "the dog alerted to the presence of narcotics in the truck, not specifically to the presence of narcotics in the bottles." (*Id.*). Plus, Rogers testified that his drug dog could detect the presence of a "residual odor" and tell officers that narcotics had recently been in a location even though the narcotics were no longer present. (*See* Doc. 68, pp. 53–54 in Case No. 1:20-cr-CLM-GMB). So officers' failure to recover narcotics from Frazier's truck was not fatal to the Government's contention that the drug-dog videos tended to prove that Frazier possessed narcotics in his work truck in August 2020.

To the extent that Frazier challenges the officers' authority to conduct the drug dog sniffs, "[a] canine sniff by a well-trained narcotics detection dog" in a public area is not "a 'search' within the meaning of the Fourth Amendment." *See United States v. Place,* 462 U.S. 696, 707 (1983); *see also Illinois v. Caballes,* 543 U.S. 405, 409–10 (2005) ("[D]og sniff . . . performed on the exterior of [a] car . . . that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment."). And Rogers testified that he ran his drug dog on multiple Talladega County work trucks in a car lot behind a Mexican restaurant. (*See* Doc. 58, pp. 56–57 in Case No. 1:20-cr-CLM-GMB). So Frazier has failed to show that Rogers needed any type of individualized suspicion to have his dog perform the drug dog sniffs.

If Frazier is instead challenging the actual search of his work truck in September 2020, he has failed to show that officers lacked probable cause to conduct that search. Probable cause to search a vehicle exists "when a drug-trained canine alerts to drugs." *United States v. Tamari,* 454 F.3d 1259, 1265

(11th Cir. 2006). And by the time officers searched Frazier's work truck, Rogers' dog had alerted to the presence of drugs in the truck on at least three separate occasions.

Frazier also hasn't shown any error with the Government's decision to wait until September 2020 to arrest Frazier for a crime that the Government said Frazier committed in October 2019. The statute of limitations for a violation of 21 U.S.C. § 841(a)(1) is five years. *See* 18 U.S.C. § 3282(a) ("[N]o person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."); *see also United States v. Ratcliff*, 245 F.3d 1246, 1248 (11th Cir. 2001) (applying § 3282's time-bar to charges brought under 21 U.S.C. § 841(a)(1)). Thus, the Government acted within its prosecutorial discretion by waiting 11 months to charge Frazier.

Finally, contrary to Frazier's assertion, Anthony didn't fail to argue these facts during trial. Anthony pointed out during Rogers' cross examination that officers didn't find "dope" on the days of the drug-dog videos and thus "had no way of verifying" whether the drug dog's hits were accurate. (*See* Doc. 68, pp. 65–66 in Case No. 1:20-cr-300-CLM-GMB). Anthony also noted that the videos were taken around 10 months after the controlled buy and suggested in closing that the drug dog sniffs weren't done until August 2020 because the officers "knew they didn't have a case." (*Id.*, pp. 68, 104). Plus, Anthony's motion for new trial made the same argument about the lack of narcotics in the bottles of alcohol that Frazier makes in his § 2255 motion. (*See* Doc. 45, p. 2 in Case No. 1:20-cr-300-CLM-GMB). And while Anthony didn't argue that there were no grounds for the drug dog sniffs or the September 2020 search of Frazier's work truck, his failure to make these arguments didn't prejudice Frazier because binding precedent establishes that the dog sniffs and search of Frazier's vehicle didn't violate the Fourth Amendment.

For all these reasons, Frazier has failed to show that the court, the Government, or defense counsel committed any error related to the dog sniffs, the search of Frazier's vehicle, or Frazier's arrest. So the court will **DISMISS WITH PREJUDICE** the first claim brought in Frazier's pro se § 2255 petition (doc. 1, p. 18).

## B.    Ineffective Assistance of Counsel

Most of Frazier's remaining claims are ineffective assistance of counsel claims. Thus, the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to these claims. Under *Strickland*, Frazier must show "(1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced" him. *Devine v. United States*, 520 F.3d 1286, 1288 (11th Cir. 2008). "To establish deficient performance, a petitioner must show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Griffith v. United States*, 871 F.3d 1321, 1329 (11th Cir. 2017) (quotations omitted). And to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 1330.

1. *Failure to investigate*: Frazier's claims that Anthony was ineffective by not checking Frazier's work attendance records, authenticating the voice recording that the Government played at trial, or obtaining Frazier's cell phone records all relate to Anthony's alleged failure to adequately investigate Frazier's potential defenses. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonably precise to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91.

a) *Work and cell phone records*: Frazier says that Anthony's failure to investigate his work records was unreasonable because Frazier asked Anthony to obtain his work records and Frazier couldn't remember if he was working and driving his work truck the day of the controlled buy. (Doc. 8, pp. 2–3). And Frazier contends that it was unreasonable for Anthony to not obtain his cell phone records because they would have shown that Fraizer was at a different location than where the controlled buy took place. (*Id.*, pp. 2–3).

The Government responds by pointing to Anthony's affidavit, which asserts that Frazier never asked Anthony to obtain his work or cell phone records and that Frazier and Anthony. (Doc. 11, p. 8; Doc. 11-1). As for prejudice, the Government says that even if the work and cell phone records that Frazier refers to exist, they would at most show that Frazier was not "*supposed* to be working that day and that the alleged [cell phone] was somewhere else." (Doc. 11, p. 8).

"[C]ontested fact issues in [§] 2255 cases cannot be resolved on the basis of affidavits." *Friedman v. United States*, 588 F.2d 1010, 1015 (5th Cir. 1979). So "[a] petitioner is entitled to an evidentiary hearing if he alleges facts that, if true, would entitle him to relief." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (quotations omitted). But this court needn't "hold a hearing if the allegations are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record." *Id.* (quotations omitted).

Under this standard, the court cannot resolve the parties' fact dispute over whether Anthony's investigation into Frazier's potential defenses was objectively reasonable without holding an evidentiary hearing. And Frazier asserts that he was prejudiced by Anthony's failure to obtain his work and cell phone records because these records would have shown that Frazier was not working in Talladega on the day of the controlled buy. Instead, they would have established that Frazier "had driven to Atlanta that day and took a Delta Flight to Dallas to spend a long weekend with friends." (Doc. 8, pp. 2–3). At this stage, Frazier "need only *allege*—not prove—reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Winthrop-Redin*, 767 F.3d at 1216. So while Frazier has not provided the court with the work and cell phone records that he says show he wasn't in Talladega driving his work truck on the day of the controlled buy, the court cannot say that it is "patently frivolous" for Frazier to assert that there's a reasonable probability that Anthony obtaining records that showed that Frazier wasn't in Talladega during the controlled buy would have changed the outcome of Frazier's trial. The court will thus **SET** an evidentiary hearing on Fraizer's ineffective assistance of counsel claims related to the failure to investigate his work and cell phone records.

9

b) *Voice analysis*: Frazier asserts that it was unreasonable for Anthony not to do a voice analysis of the phone call because he told Anthony that it was not his voice on the recording. (Doc. 8, p. 2). Anthony responds that while he and Frazier discussed performing a voice analysis of the recording, they ultimately decided to use Frazier's brother and girlfriend to verify that it wasn't Frazier's voice on the phone with the informant. (Doc. 11-1, ¶ 3). Then, after the Government rested, Anthony and Frazier made the strategic decision not to put on any evidence even though Frazier's brother and girlfriend were at the courthouse ready to testify. (*Id.*). Again, the court cannot make credibility determinations at this stage, so Anthony's assertion that he and Frazier made a strategic decision to not present evidence that the call recorded someone else's voice fails to establish that Frazier cannot prove deficient performance. *See Friedman*, 588 F.2d at 1015.

But Frazier has failed to show prejudice because he hasn't alleged what the result of the voice analysis would be or whether the voice analysis would rule Frazier out as the voice heard on the recording. And as the Government points out, Anthony thoroughly cross-examined Agent Lane about the identity of the voice on the recording and noted that Agent Lane hadn't been able to trace the phone number that placed the call back to Frazier. (*See* Doc. 68, pp. 8–11, 13–14, 21–22, 27 in Case No. 1:20-cr-300-CLM-GMB). Anthony also explained in closing that he believed that Agent Lane was "exaggerating" when she said that she had heard Frazier's voice "a hundred times" and again noted that the phone number associated with the call was never traced back to Frazier. (*Id.*, pp. 101–02). Despite this cross examination and closing argument, the jury determined that Frazier was the person who participated in the controlled buy in October 2019. So without providing details about what the voice analysis would have revealed, Frazier has given the court "no basis . . . to believe that the outcome would have been different" if Anthony had obtained a voice analysis. (Doc. 11, p. 9). Thus, the court will **DISMISS WITH PREJUDICE** Frazier's ineffective assistance of counsel claim related to the failure to obtain a voice analysis.

10

2. *Character witnesses*: Frazier next asserts that Anthony was ineffective for not calling character witnesses who would have testified that Frazier "had a reputation in the community for being truthful and honest." (Doc. 8, pp. 2, 4; *see also* doc. 1, p. 19). The court disagrees. As discussed, at the time of Frazier's trial, the Government was conducting a bigger investigation into Frazier that ultimately led to Frazier being convicted of 23 counts of money laundering the proceeds of drug distribution, four counts of structuring transactions to avoid reporting requirements, one count of conspiracy to commit wire fraud, one count of money laundering the proceeds of wire fraud, and three counts of filing a false tax return. And it was the Government's position that evidence of Frazier's "good character" could open the door to evidence about this bigger investigation. (*See* Doc. 66, p. 6 in Case No. 1:20-cr-300-CLM-GMB). To be sure, the Government objected when Anthony began discussing Frazier's good character during closing because the Government wasn't allowed "to go into other acts that [it] investigated [Frazier] for and [felt] like [it] could have shown" the jury. (*See* Doc. 68, pp. 106–09 in Case No. 1:20-cr-300-CLM-GMB). Thus, it was objectively reasonable for Anthony to not call character witnesses because doing so created a risk that the Government would be allowed to present evidence of the bigger investigation into Frazier.

Frazier has also failed to show that the character witnesses' testimony would have changed the trial outcome. Frazier's only description of the character witness testimony is that Frazier requested that Anthony allow two character witnesses to testify and that these witnesses would have testified about Frazier's "good character" and "reputation in the community for being truthful and honest." (Doc. 1, p. 19; Doc. 8, pp. 2, 4). Frazier provides no specifics about the nature of the character witness testimony and doesn't describe his relationship to these witnesses. Nor does Frazier explain why the testimony from these witnesses would undermine the Government's evidence that Frazier participated in the October 2019 controlled buy. Because Frazier has failed to allege "reasonably specific, non-conclusory facts" about the effect of Anthony's decision to not call character witnesses, Frazier isn't entitled to an evidentiary hearing on his character witness ineffective assistance of counsel claim. *Winthrop-Redin*, 767 F.3d at 1216. The court will thus **DISMISS** this claim **WITH PREJUDICE**.

11

3. *Closing argument*: Frazier also says that Anthony rendered ineffective assistance because his "closing argument closed the case for the prosecutor." (Doc. 1, p. 20). According to Frazier, Anthony argued that Agent Lane lied on the stand, which prejudiced Frazier because there were 10 women on the jury. Frazier also asserts that Anthony should have pointed out during closing that Frazier (a) served in the United States Army Reserves, (b) worked for FF Auto Frazier Investments, LLC and Head of Game Management, LLC, and (c) had recently earned a master's degree from Jacksonville State in Sports Management. (*Id.*).

Frazier has failed to show that Anthony's statements about Agent Lane during closing arguments were objectively unreasonable. While Anthony called the confidential informant a liar, he couched his criticism of Agent Lane's testimony by saying that "her credibility is not attacked." (Doc. 68, pp. 99–100 in Case No. 1:20-cr-300-CLM-GMB). And it was objectively reasonable for Anthony's closing strategy to be to point out discrepancies in Agent Lane's testimony and inconsistencies between her testimony and the confidential informant's testimony. It was also reasonable for Anthony to suggest that the reason for Agent Lane's inconsistent testimony was that she was trying to make her testimony match what the confidential informant told the jurors. In short, Agent Lane and the confidential informant were the Government's main witnesses, so challenging their testimony during closing was "sound trial strategy." *See Strickland*, 466 U.S. at 689.

It was also sound trial strategy for Anthony to not discuss during closing Frazier's time in the Army Reserves, work for FF Autos and Head of Game, and master's degree in Sports Management. As explained, presenting evidence of Frazier's good character created the risk that the Government would discuss what it had learned during its bigger investigation into Frazier. For example, Frazier's involvement in Head of Game is what ultimately led to his wire fraud conviction, and the Government showed during Frazier's second trial that the business account for FF Autos was used to conceal income from Frazier's drug distribution. (*See* Doc. 266-1, pp. 14, 17–18 in Case No. 1:21-cr-371-CLM-JHE). Plus, when Anthony began describing Frazier's work as "a businessman" and "sports agent," the Government objected to point out that it believed this argument opened the door to evidence about the bigger investigation. (Doc. 68,

12

pp. 105–09 in Case No. 1:20-cr-300-CLM-GMB). So Anthony didn't perform deficiently by failing to further press this issue.

Finally, Frazier has failed to show how Anthony's closing argument prejudiced him. And having reviewed the record, the court finds that Anthony's statements about Agent Lane and failure to discuss Frazier's business and military background do not undermine the jury's guilty verdict. As a result, the court will **DISMISS WITH PREJUDICE** Frazier's ineffective assistance of counsel claim related to Anthony's closing argument.

4. *Right to testify*: Frazier's final ineffective assistance of counsel claim is a claim that Frazier's Sixth Amendment right to testify in his own defense was violated. *See United States v. Teague*, 953 F.2d 1525, 1534 (11th Cir. 1992) (en banc) ("Because it is primarily the responsibility of defense counsel to advise the defendant of his right to testify and thereby to ensure that the right is protected, . . . the appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is a claim of ineffective assistance of counsel . . . ."). "[B]y not protecting the defendant's right to testify, defense counsel's performance [falls] below the constitutional minimum, thereby violating the first prong of the *Strickland* test." *Id.* at 1534. So defense counsel performs deficiently if he "refuse[s] to accept the defendant's decision to testify" and does "not call him to the stand." *Id.* Defense counsel also performs deficiently if he doesn't inform "the defendant of the right to testify, and that the ultimate decision belongs to the defendant." *Id.*

Frazier states that he believed that he was going to testify and wanted to testify but that Anthony never called him to the stand. (Doc. 8, p. 3). The Government responds by pointing to Anthony's affidavit, which says that Anthony "explained to Mr. Frazier his right to testify and the circumstances around testifying and he did not wish to testify." (Doc. 11-1, ¶ 6). But the Government doesn't dispute that Anthony refusing to allow Frazier to testify would have prejudiced Frazier.

The trial record tends to support Anthony's version of events. Right before the Government's last witness, Anthony stated that he needed to talk to his client and his family about whether to put on a defense. (*See* Doc. 68, p. 49 in Case No. 1:20-cr-300). The court then cleared the courtroom of everyone but

Anthony, Frazier, and Frazier's family for around 20 minutes. (*See id.*, pp. 49–50). And after the Government rested, Anthony informed the court that the defense had decided not to put on any witnesses. (*Id.*, pp. 72–73). But Frazier never stated on the record that he understood he had a right to testify or that he had knowingly and voluntarily waived that right or discussed the pros and cons of testifying with Anthony. Thus, the court cannot say that Frazier's "motion and the files and records of the case conclusively show that [Frazier] is entitled to no relief" on his Sixth Amendment right to testify claim. *See* 28 U.S.C. § 2255(b). As a result, the court will **SET** an evidentiary hearing on Frazier's claim that his Sixth Amendment right to testify was violated.

—

In sum, the court **SETS** an evidentiary hearing on Frazier's ineffective assistance of counsel claims related to Anthony's alleged failure to obtain Frazier's work and cell phone records and violation of Frazier's Sixth Amendment right to testify. The court **DISMISSES WITH PREJUDICE** Frazier's ineffective assistance of counsel claims related to the failure to obtain a voice analysis, call character witnesses, and counsel's closing argument.

### C.    Confidential Informant's Pending Charges

Frazier's final claim is that the jury should have known the nature of the charges and the potential sentence the confidential informant was facing at the time of trial. It's unclear whether this claim is another ineffective assistance of counsel claim or whether Frazier is contending that the court made an erroneous evidentiary ruling or violated Frazier's Confrontation Clause rights by not allowing testimony about the confidential informant's pending charges. The court will therefore address each of Frazier's potential claims below.[1]

---

[1] It seems clear to the court that Frazier procedurally defaulted any Confrontation Clause or evidentiary challenge to the lack of testimony on the confidential informant's pending charges by not raising this issue during his direct appeal. *See Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (The procedural default doctrine generally bars § 2255 challenges to alleged trial errors that could have been raised during direct appeal.). But the Government's response brief doesn't specifically address Frazier's claim related to the confidential informant's testimony or argue that any of Frazier's claims are procedurally

1. *Confrontation Clause*: "The Confrontation Clause of the Sixth Amendment guarantees criminal defendants an opportunity to impeach through cross-examination the testimony of adverse witnesses." *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1178 (11th Cir. 2006). So a defendant is required "to have some opportunity to show bias on the part of a prosecution witness." *Id.* The "defendant's confrontation rights are satisfied when the cross-examination permitted exposes the jury to facts sufficient to evaluate the credibility of the witness and enables defense counsel to establish a record from which he properly can argue why the witness is less than reliable." *Id.*

Frazier has failed to point to any court ruling that limited his ability to cross-examine the confidential informant about his pending charges or motivation to testify on behalf of the Government. And having reviewed the trial record, the court has found no examples of the court limiting Frazier's ability to explore these topics with the confidential informant. The jury was also "expose[d] . . . to facts sufficient to evaluate the credibility of" the confidential informant. *Id.* The confidential informant testified that he had recently been arrested and that he was hoping to get credit by testifying against Frazier. (Doc. 67, pp. 91–92 in Case No. 1:20-cr-300-CLM). And during cross examination, Anthony asked the confidential informant if he was telling the truth or if his testimony had something to do with being in trouble and "trying to get them to do a deal for you." (*Id.*, pp. 177–78). The court then instructed the jury that "a witness who hopes to gain more favorable treatment in their own cases may have a reason to make a false statement in order to strike a good bargain with the government." (Doc. 68, p. 87 in Case No. 1:20-cr-200-CLM). Thus, while the jury didn't learn about the confidential informant's specific charges or the sentence that he was facing, Frazier's Confrontation Clause rights were satisfied because he was permitted "to establish a record from which [he] could challenge the credibility of the" confidential informant. *See Arias-Izquierdo*, 449 F.3d at 1179.[2]

---

defaulted. So the court finds that the Government has waived the affirmative defense of procedural default. *See Foster v. United States*, 996 F.3d 1100, 1106–07 (11th Cir. 2021).

[2] Because Frazier has failed to show that the court made any evidentiary rulings that limited questioning the confidential informant about his pending charges, Frazier has also failed to establish that there was any violation of the Federal Rules of Evidence that entitles him to § 2255 relief.

2. *Ineffective assistance*: To the extent that Frazier is arguing that Anthony was ineffective for failing to present evidence of the confidential informant's pending charges or potential sentence, the court finds that Frazier has failed to show prejudice. As discussed, the jury knew that the confidential informant had recently been arrested and that he was hoping that his testimony against Frazier would help him with those charges. And Anthony suggested during cross examination that the confidential informant's testimony was not truthful because he was "in trouble" and "trying to get . . . a deal." (Doc. 67, p. 177–78 in Case No. 1:20-cr-300-CLM-GMB). The court then instructed the jury that it should consider "with more caution" the testimony of a witness who was hoping to gain more favorable treatment from the Government. (Doc. 68, p. 87 in Case No. 1:20-cr-300-CLM-GMB). And Anthony pointed out in closing that "the first thing the government" told the jury was that the confidential informant had "an interest in the outcome of the case." (*Id.*, p. 99). Anthony later emphasized the court's instruction that the jury needed to consider "whether or not [the confidential informant] was promised any type of favor, favorable treatment from the government." (*Id.*, p. 104).

Given the jury's knowledge that the confidential informant was seeking favorable treatment from the Government in his pending cases, Frazier has failed to establish that there's a reasonable probability that providing the jury with more information about the confidential informant's pending charges or the sentence he was facing would have made a difference in the jury's verdict. As a result, the court will **DISMISS WITH PREJUDICE** Frazier's claims related to the confidential informant's pending charges and potential sentence.

## CONCLUSION

For these reasons, the court **DISMISSES WITH PREJUDICE** Frazier's claims related to (1) the search of his work truck, (2) the failure to obtain a voice analysis, (3) the failure to call character witnesses, (4) counsel's closing argument, and (5) the lack of evidence about the confidential informant's pending charges. The court **SETS** an evidentiary hearing on Frazier's claims that Anthony provided ineffective assistance by failing to obtain Frazier's work and cell phone records or protect Frazier's right to testify for **July 2, 2026 at 9:00am** in the United States Courthouse, Anniston, AL 36201 (1100 Gurnee Ave.).

16

The court **ORDERS** the Government to secure the presence of Frazier and Attorney Emory Anthony at the evidentiary hearing.

Under Rule 6 of the Rules Governing § 2255 Proceedings, the court **GRANTS** the parties' leave to conduct discovery on Frazier's claims that Anthony was ineffective for not (1) obtaining Frazier's work records, (2) acquiring Frazier's cell phone records, or (3) ensuring that Frazier was allowed to exercise his right to testify in his own defense. All discovery must be commenced in time to be completed by **June 18, 2026**

**Done** and **Ordered** on April 27, 2026.

_____

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE

17